**STATE of Oklahoma, ex rel. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**George E. BREWER, Respondent.**

**SCBD No. 3337.**

Supreme Court of Oklahoma.

Dec. 26, 1989.

Rehearing Denied Mar. 19, 1990.

K. Lynn Anderson, Oklahoma City, for complainant.

Frank Hickman, James R. Ryan, Tulsa, for respondent.

SUMMERS, Justice.

This matter comes before us on the recommendation of a trial panel of the Professional Responsibility Tribunal that a lawyer already suspended from the practice of law be disbarred. George E. Brewer was privately reprimanded by this court in 1978. Then in 1982 he was suspended for a period of three years. When he applied for reinstatement we denied his petition on May 26, 1986 in case SCBD 3234. The Bar Association then filed a six Count Complaint seeking further discipline. Because most of the conduct therein complained of occurred prior to, and was in fact the subject of, the 1986 reinstatement litigation, we decline to impose additional discipline, but leave the earlier suspension in effect.

Count II of the Amended Complaint was dismissed by the Bar Association.[1] We reviewed respondent's conduct with regard to Counts III, IV, and V when we denied his petition for reinstatement in 1986. Count III involves the respondent's conduct as a defendant in a forcible entry and detainer proceeding. In the earlier SCBD 3234 the trial panel found that the respondent's conduct in that district court proceeding violated two Disciplinary Rules. The trial panel in this present disciplinary proceeding SCBD 3337 found that the re-

spondent's same conduct violated the Code of Professional Responsibility and warranted discipline. Count IV involves the respondent's conduct as a defendant in a quiet title suit. The trial panels in both the earlier SCBD 3234 and the present SCBD 3337 found that the respondent engaged in the unauthorized practice of law in the quiet title suit after his 1982 suspension. Count V involves allegations that the respondent failed to exercise independent professional judgment in the quiet title proceeding. In SCBD 3234 the panel found that the respondent's conduct in the quiet title proceeding violated two Disciplinary Rules, while in this case the panel found that the respondent's same conduct was unprofessional and warranted discipline.

The fragmentation of claims arising from the same transaction or occurrence is disfavored by courts. In *Southern Construction Co. v. United States*, 371 U.S. 57, 83 S.Ct. 108, 9 L.Ed.2d 31 (1962), the Court explained:

"The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Id.* 371 U.S. at 60, 83 S.Ct. at 110.

A slightly different expression of this concern appears when a party attempts to invoke this court's appellate jurisdiction over a trial court order which leaves interrelated counterclaims unadjudicated. When such occurs the order is not final for the purpose of appellate jurisdiction. *Eason Oil Co. v. Howard Engineering*, 755 P.2d 669 (Okla.1988). The piecemealing of litigation, whether before the trial court or this court, results in the duplication of judicial resources, and thus, a waste of state revenues. This is precisely what has hap-

---

1. Although Count II was dismissed by the Complainant, the Court notes that Complainant's Exhibit #2 in this proceeding shows that the allegations of Count II were considered by the trial panel in SCBD 3234 and the panel found that said allegations did not adversely reflect on the respondent's ability to practice law.

pened in the present proceeding with regard to Counts III, IV and V.

■ The similarity in the allegations and findings of Counts III thru V is set forth above. A review of the transcript of proceedings before the trial panel shows that five witnesses[2] were called to prove the allegations of Counts III–V and some of these witnesses testified in the reinstatement proceeding. Thus, two trial panels of the Tribunal approximately three years apart heard the same testimony regarding the same conduct of the respondent. This court was called upon to review that evidence then and again now.[3]

■ This court has a long tradition of refusing to circumscribe disciplinary proceedings, including reinstatement proceedings, by procedural rulings. *State ex rel. Oklahoma Bar Association v. Samara,* 683 P.2d 979, 983 (Okla.1984). The protection of the public is paramount to any interest in judicial economy. However, protection of the public may be adequately served by consolidating reinstatement and disciplinary proceedings into one combined proceeding before one trial panel.

■ We conclude that when a reinstatement petition is opposed because of the conduct of the applicant the General Counsel[4] should then file a formal complaint against the applicant if General Counsel intends that such conduct be used for the imposition of additional discipline.[5] The trial panel should combine the reinstatement and disciplinary hearings into one hearing and then make the appropriate findings and conclusions in one report filed in this court. We therefore decline to review Counts III, IV and V in the present case.

We now turn to an examination of Counts I and VI of the Amended Complaint. Count I of the Amended Complaint involves the respondent's conduct in circulating insulting material concerning certain Oklahoma Judges and Justices. In *State ex rel. Oklahoma Bar Association v. Porter,* 766 P.2d 958 (Okla.1988) we recognized that "criticism by an attorney amounting to an attack on the motivation, integrity or competence of a judge whose responsibility is to administer the law may be under certain circumstances properly censurable". *Id.* 766 P.2d at 965.

■ The respondent here asserted that the Supreme Court is lazy and disinterested and described the opinion suspending him from the practice of law as a "courtesy" for the benefit of Tulsa County Judges. His allegations include insults of "ignorance" and "cowardice" on the part of Judges and Justices. In January of 1983

---

2. Testimony given in the reinstatement proceeding in 1985 by a sixth witness was admitted after the panel found that the witness was unavailable.

3. This court independently reviews the evidence submitted to a trial panel in either a reinstatement proceeding, *Matter of Reinstatement of Floyd,* 775 P.2d 815, 816 (Okla.1989), or a proceeding to impose discipline, *State, ex rel. Oklahoma Bar Association v. Raskin,* 642 P.2d 262, 266 (Okla.1982).

4. The General Counsel may investigate allegations against a lawyer which are brought to his attention in any manner whatsoever, Rule 5.1 of the Rules Governing Disciplinary Proceedings, and this includes applications for reinstatement. Rules 6 and 11 set forth different schedules for when a hearing takes place before the trial panel. Rule 11.3(a) provides for a hearing no more than 90 days after filing of the petition for reinstatement. However, a Rule 6 hearing does not occur until after an investigation, an opportunity to respond by a respondent to the allegations, review by the General Counsel and Pro-

fessional Responsibility Commission, the filing of a formal complaint, and an opportunity to respond to the formal complaint by the respondent. We note that Rule 11.3(d) states that "Discovery may be had, and the procedure, authority and powers of the Trial Panel shall be the same as those provided in Rule 6". We also note that Rule 6.7 provides that the Chief Master or Vice–Chief Master of the Professional Responsibility Tribunal may extend the time for holding a hearing for good cause shown. Thus, the Chief Master or Vice–Chief Master may extend the time for a combination reinstatement/disciplinary hearing in order for compliance with the disciplinary procedures.

5. We would make no such requirement if the General Counsel reasonably believed the acts used in opposition to reinstatement standing alone would warrant no action for discipline, although in combination with other, later to be committed, acts, they might justify disciplinary action.

the respondent claimed that the "Bench and Bar of the State of Oklahoma has been totally disinterested, totally incompetent and totally unfit to act with respect to my 'liability' and traumatic epileptic disability". Complainant's Exhibit 15. However, when these documents are viewed in their entirety we believe that no reasonable person would give any credence to the allegations, and that they merely reflect the severity of the trauma-induced mood-swings that tormented Respondent in those days.[6] Further, all such documents were written in 1982 and 1983, well before the hearing on respondent's reinstatement proceedings, and could have been used against respondent therein had Complainant chosen to do so. We decline to further discipline the respondent for his statements.

Count VI involves the respondent using printed checks and envelopes with the respondent's name and the words "Attorney at Law" appearing thereon. This Count also includes the allegation that the respondent had a sign outside of his office for a period of time which indicated that he was an attorney at law. This Count includes allegations concerning a dispute the respondent had with an individual hired by the respondent to build him a desk.

The evidence shows that the respondent did use printed checks and envelopes bearing his name and the notation "Attorney at Law" and that he did have a sign in front of his office for approximately one month bearing his name and the words "Attorney at Law". The dispute with the individual was merely a bonafide dispute with a worker over the amount of compensation owed. The dispute was ultimately resolved with both parties compromising.

The respondent admits the truth of the allegations and requests that we institute a special program that would monitor the respondent while he practices law. The respondent's medical expert was of the opinion that the respondent could practice

law "with some guidance by whatever State Boards have authority in that area". The respondent encourages the Court to remand the proceeding to the trial panel so that he may show his fitness to practice law with "guidance".

 Mr. Brewer's use of the sign and stationery holding himself out as an attorney at law while under an order of suspension was clearly improper. We therefore decline to remand the matter for further proceedings before the Professional Responsibility Tribunal as requested. We decline to impose, at this time, any more discipline on the respondent who is still under suspension from our order in 1982. Motion to tax costs is denied.

HODGES, DOOLIN, ALMA WILSON and KAUGER, JJ., concur.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, J., concur in result.

SIMMS, J., disqualified.

---

**6.** Complainant's Exhibit 15 states that the Bench, Bar, and "segments of the populace generally ... have worked so hard for so long to destroy me...." *Id.* at 2. In another document the respondent complains of "the secret acts of, to me unknown, members of the Judiciary of the State of Oklahoma secretly engaged in over the past ten years through others". Complainant's Exhibit 18. This document also states "Not knowing whom said secretive enemies are, I can only presume that all members of the judiciary are my enemy,...." *Id.*